**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 12-22347-CIV-SIMONTON**

RICARDO A. POLANCO,

          Plaintiff,

 v.

CAROLYN W. COLVIN, Acting Commissioner
of Social Security Administration[1],

          Defendant.

_____/

<u>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**</u>

      This matter is before the Court on the cross-motions for summary judgment filed by Plaintiff Ricardo A. Polanco ("Plaintiff") and by Defendant Carolyn W. Colvin, ("Defendant"), Acting Commissioner of Social Security Administration, ECF Nos. [16] [17]. Plaintiff filed a Reply, ECF No. [21]. Pursuant to the Clerk's Notice Reassigning Case, the matter has been referred  to the undersigned to take all necessary and proper action as required by law, through and including trial by jury and entry of final judgment, ECF No. [22]. The summary judgment motions are now ripe for disposition.

      For the reasons stated below, the undersigned hereby **DENIES** the Plaintiff's Motion for Summary Judgment, ECF No. [16], and **GRANTS** the Defendant's Motion for Summary Judgment, ECF No. [17].

_____

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

I.    **PROCEDURAL BACKGROUND**

On April 16, 2008, the claimant filed an application for Supplemental Security Income ("SSI") and Disability Insurance Benefits (R. 152-164).[2]  The Plaintiff applied for SSI and Disability Insurance Benefits alleging disability based upon panic attacks, diabetes, and high blood pressure commencing on June 6, 2007. [3]   These claims were denied initially and upon reconsideration.  Upon request by the Plaintiff, a hearing was held before an Administrative Law Judge ("ALJ") on July 6, 2010.  (R. 40-76).  The Plaintiff was represented by counsel, and a vocational expert ("VE") also testified.  (R. 40-76).  On August 13, 2010, the ALJ issued a decision finding that the Plaintiff was not disabled.  (R. 28-39). The Plaintiff requested review from the Social Security Administration Appeals Council, which denied review on April 24, 2012. (R.1-3). Having exhausted all administrative remedies, Plaintiff timely filed the pending Complaint seeking judicial review of the administrative proceedings pursuant to 42 U.S.C. § 405(g), ECF No. [1].

II.    **LEGAL ISSUES PRESENTED**

The Plaintiff asserts that the ALJ committed the following errors, in determining that he was not disabled.

1.  The ALJ committed reversible error in failing to set forth the requisite good cause for rejecting the opinion of Dr. Pittack, the Plaintiff's long time treating physician.

---

[2]  The letter "R," followed by a page number, is used to designate a page in the Administrative Record, which is contained in ECF No. [8].

[3] The Plaintiff initially alleged an onset date of December 15, 2006, but at the hearing before the ALJ his counsel amended the onset date to June 6, 2007, the date that the Plaintiff was first examined for mental health issues.  (R. 43).

2

2. The ALJ's Residual Functional Capacity ("RFC") finding is not based on substantial evidence.

3. The ALJ committed reversible error in failing to properly assess the Plaintiff's subjective complaints and credibility.

4. The ALJ failed to sustain her burden of establishing that there is other work in the national economy that the Plaintiff could perform.

ECF No. [16] at 1.

### III.   PLAINTIFF'S BACKGROUND

#### A.   General Background

The Plaintiff was born on August 27, 1970.  (R. 88).  The Plaintiff has a high school education plus two years of technical school. (R. 48).  The Plaintiff has past work history consisting of work as a marble counter top designer, security guard, manager at Target, and inspector for the Florida Department of Agriculture.  (R. 49-55).  The Plaintiff resides with his wife, father-in-law, and mother-in-law.  (R. 48).

#### B.   Physical Medical History

As the Plaintiff's challenge to the ALJ's determination consists mainly of the allegation that the ALJ did not adequately address the Plaintiff's treating psychiatrist, the undersigned does not find it necessary to complete a full recitation of the Plaintiff's alleged physical impairments.[4]  A review of the Plaintiff records does however reveal that the Plaintiff has been diagnosed, and received treatment for, uncontrolled diabetes mellitus, hyperlipidemia, obesity, and hypertension. (R. 251-291, 439-461).

---

[4] To the extent that the Plaintiff asserts that the Plaintiff's physical RFC assessment is not accurate, the undersigned notes that the Plaintiff fails to assert what effect the Plaintiff's physical impairments have on the Plaintiff's ability to sustain fulltime employment. While the record does reflect uncontrolled diabetes for instance, the Plaintiff does not allege how, or if it all, this condition impacts the Plaintiff's ability to work.

3

### C.   Mental Medical History

The Plaintiff has received psychiatric treatment for depression and a panic disorder at Citrus Health Network ("Citrus") commencing on June 6, 2007.  (R. 356).  At his initial appointment at Citrus, the Plaintiff stated that his panic disorder had progressively worsened, that he had phobias, and that he suffered from depression.  (R. 356). The Plaintiff reported that he was not able to be at home alone and was "dependent on his parents for everything." (R. 356).   The Plaintiff began receiving monthly to bi-monthly treatment from William Pittack, M.D., a psychiatrist at Citrus.  (R. 413-435). On the Master Treatment Plan dated September 21, 2007, Dr. Pittack diagnosed the Plaintiff with major depressive disorder, severe, panic disorder, and ADHD. (R. 350).  Dr. Pittack continued to diagnose the Plaintiff with major depressive disorder and panic disorder during the time period of September 17, 2008, through June 17, 2010.  The Plaintiff saw Dr. Pittack on thirty-two occasions, and during this time, the Plaintiff was prescribed several medications to treat his psychiatric disorders including Pexeva, Clonazepam, and Trazodone.  (R. 462-470).

Dr. Pittack's treatment notes indicate that Dr. Pittack continued to diagnose the Plaintiff with depression and anxiety (R. 334, 335, 343. 344, 347, 415).  Generally, the treatment notes reflect that the Plaintiff reported less anxiety, depression, insomnia, and an absence of psychosis over the course of treatment. (R. 343, 344, 415, 416, 421, 423, 425, 427). Notably absent from the treatment notes are discussions regarding the intensity of the Plaintiff's symptoms notwithstanding the Plaintiff's reports that he was experiencing fewer symptoms.

### D.   Hearing Testimony

An administrative hearing was conducted on July 6, 2010, in Miami, Florida, attended by the Plaintiff and his counsel. (R. 40-76).  Christina Morrison, a VE, also testified at the hearing.

4

### 1.  The Plaintiff's Testimony

The Plaintiff testified regarding his past employment as a marble counter designer/installer, security guard, department manager, and inspector for the Florida Department of Agriculture.  (R. 48-55).  He testified that he first had a panic attack while working in 2005.  (R. 52).  The Plaintiff stated that he stopped working in 2006 because he was having panic attacks and he was not able to control himself.  (R. 56).  He stated that he gets up between 10:00 and 12:00 and stays at home most days.  (R. 58).  He reported getting angry and irritable for his wife for no reason. (R. 60).  He stated that he feels "worthless" and has recurring thoughts on death.  (R. 61).  He stated that he goes grocery shopping with his wife but he prefers to be alone and does not enjoy interacting with other people.  (R. 63). The Plaintiff testified that his sleep is interrupted by a panic attack approximately two times a week and he has panic attacks on average every two to three days.  (R. 64, 66).  The Plaintiff reported that he does not drive alone because he gets lost even when in familiar areas and is not able to take public transportation (R. 67, 69).

### 2.  The VE Testimony

The ALJ presented the following hypothetical:

> [A]ssume a hypothetical claimant of the same age, education, and work experience as Mr. Polanco and we assume that I find such a hypothetical claimant can occasionally lift, carry, push and pull 50 pounds, frequently 25 pounds.  Sit stand and walk six hours each in an eight hour work day and can occasionally climb ramps, stairs, ladders, ropes, scaffold, balance, stoop, kneel, crouch and crawl… And we also assume that such a hypothetical claimant is only capable of understanding, remembering and carrying out short simple instructions, responding appropriately to supervisor, co-workers, usual work situations and changes but in a routine work setting.

(R. 71-2).

The VE testified that such an individual would not be able to perform the Plaintiff's past relevant work as a department manager or security guard. (R. 72). The VE further testified that such a hypothetical claimant would be able to perform work as a dining room attendant or cook helper. (R. 73). When asked if the hypothetical was changed so that the hypothetical claimant can only occasionally work with supervisors and co-workers and should not work with the public, the VE testified that the two listed jobs would not be sufficient. (R. 73). The VE testified that such a hypothetical claimant would be able to perform work as a laundry worker. (R. 74).

Finally, when asked if a hypothetical claimant with the same physical limitations as listed above, but who is not capable of understanding, remembering and carrying out short simple instructions, working appropriately with supervisors, co-workers or the public, and is not capable of responding appropriately to usual work situations and changes in a routine work setting, could perform any jobs, the VE responded "that would eliminate all work." (R. 74).

## IV.   LEGAL FRAMEWORK

### A.   Standard of Review

Judicial review of the ALJ's decision in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's factual findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Bloodworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

When reviewing the evidence, the Court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence "preponderates" against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence.  *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Baker v. Sullivan*, 880 F.2d 319, 321 (11th Cir. 1989).  This restrictive standard of review, however, applies only to findings of fact.  No presumption of validity attaches to the Commissioner's conclusions of law, which are reviewed *de novo*, including the determination of the proper standard to be applied in reviewing claims.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991) ("The Commissioner's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."); *Martin v. Sullivan*, 894 F.2d at 1529.

> B.     The Five Step Sequential Analysis

The Social Security Administration applies a five-step sequential analysis to make a disability determination. 20 C.F.R. §§ 404.1520(a), 416.920(a).  The analysis follows each step in order, and the analysis ceases if, at a certain step, the ALJ is able to determine, based on the applicable criteria that the claimant is disabled, or that the claimant is not disabled.

> 1. Step One

At step one, the ALJ must determine whether the Plaintiff is engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  The ALJ found that the Plaintiff met the insured status requirements of the Social Security Act through December 30, 2010, and had not engaged in substantial gainful activity since the alleged onset date.

### 2. Step Two

At the second step, the claimant must establish that he has a severe impairment. 20 C.F.R. 404.1520(c). The ALJ must make a severity determination regarding the claimant's medically determinable impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). "There is no need for an ALJ to identify every severe impairment at step two." *Tuggerson-Brown v. Commissioner of Social Security*, No. 13-14168, 2014 WL 3643790, at *2 (11th Cir. Jul. 24, 2014). At step two the ALJ found that the Plaintiff had the following severe impairments: diabetes, obesity, and an affective disorder. Because the ALJ found that the Plaintiff had at least one severe medically determinable impairment or combination of impairments, the process advanced to the third step.

### 3. Step Three

The third step required the ALJ to consider if the Plaintiff's impairment or combination of impairments was at the level of severity to either meet or medically equal the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app.1. (commonly referred to as the "Listings"). 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. A Plaintiff is considered to be disabled if her impairment or combination of impairments: 1) is severe enough to meet or to medically equal the criteria of a listing; and, 2) meets the duration requirement under 20 C.F.R. §§ 404.1509, 416.909. Here, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that met or equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17), 20 C.F.R. §§ 404.1520(d), 416.920(d). The Plaintiff does not challenge this determination.

### 4. Step Four

Step four is a two-pronged analysis that involves a determination of whether the impairments prevent the Plaintiff from performing his past relevant work. First, the ALJ

8

must make a determination of the Plaintiff's Residual Functional Capacity ("RFC") as described in 20 C.F.R. §§ 404.1520(e), 416.920(e).  RFC measures a person's ability to do physical and mental work activities on a sustained basis despite limitations caused by his impairments.  In making this determination, the ALJ must consider all of the claimant's impairments, regardless of the level of severity. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945; SSR 96-8p; *Tuggerson-Brown,* 2014 WL 3643790, at *2 (an ALJ is required to consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation).

The ALJ found that the Plaintiff had the RFC to perform a limited range of medium unskilled work as defined in 20 C.F.R. § 404.1567(c).  Specifically, the ALJ found that he the Plaintiff:

> is capable of lifting, carrying, pushing and pulling 50 pounds occasionally and 25 pounds frequently.  He is able to sit, stand and walk 6 hours each in an 8 hour workday.  He can frequently balance, stoop, kneel, crouch and crawl, and can occasionally climb ramps, stairs, ladders, ropes and scaffolds. Lastly, he is able to at least understand, remember and carry out short simple instructions, respond appropriately to supervisors, co-workers and usual work situations and deal with changes in a routine work setting.

(R. 32).

The second phase of step four required the ALJ to make a determination of whether the Plaintiff had the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f).  Relevant work has been defined as work performed within the last 15 years and performed long enough so that 1) the claimant could learn to do the job; and, 2) be considered substantial gainful activity.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  During the second part of step four, the ALJ made the determination that Plaintiff was unable to perform his past relevant work.  (R. 38).  The ALJ proceeded to the fifth and final step.

5. <u>Step Five</u>

If the claimant is not able to perform his past relevant work, the ALJ progresses to the fifth step. At this step, the burden of production shifts to the Commissioner to show that other work that Plaintiff can perform exists in significant numbers in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 128 (11th Cir. 1999); 20 C.F.R. §§ 404.1520(g), 416.920(a)(4)(v). In making this determination, the ALJ considers a claimant's RFC, age, education, and work experience to determine if the claimant can perform any other work. If the claimant can perform other work, the ALJ will make a finding that the claimant is not disabled.

At this step, the ALJ determined that the Plaintiff had at least a high school education and was able to communicate in English. (R. 38). The ALJ relied on the testimony of the VE and found that considering the Plaintiff's age, education, work experience, and RFC, there were significant number of jobs in the national economy that the Plaintiff could perform, including dining room attendant, and cook helper. (R. 38).

V.     <u>LEGAL ANALYSIS</u>

A.     <u>The Opinion Evidence of Record</u>

1.     <u>Issues Regarding the Plaintiff's Treating Psychiatrist</u>

The Plaintiff asserts that the ALJ erred by failing to set forth the requisite good cause for rejecting the opinion of the Plaintiff's treating psychiatrist, Dr. Pittack, ECF No. [16] at 9. The Defendant does not challenge the fact that Dr. Pittack is the Plaintiff's treating physician, but asserts that substantial evidence supports the ALJ's finding that Dr. Pittack's opinion was entitled to little weight, ECF No. [17] at 11-15. The Defendant also asserts that the Plaintiff's explanation of the relevant case law surrounding treating physicians was outdated. (R. 13-14).

## 2. The Framework For Analyzing Medical Opinions

An ALJ is required to consider and explain the weight given to different medical doctors such as treating, examining and consulting physicians. *See McCloud v. Barnhart*, 166 F. App'x 410, 419 (11th Cir. 2006). The opinion of a treating physician as to the nature and severity of an impairment is entitled to controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2).

The regulations also list the factors that the ALJ is to consider when weighing medical opinions. 20 C.F.R. §§ 404.1527(c), 416.927(c). Such factors include the treating and examining relationship, length of treatment, supportability, consistency, and specialization. *Id.* In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011), the Eleventh Circuit Court of Appeals concisely set forth the following guidelines to apply in evaluating an ALJ's treatment of medical opinions:

> Absent "good cause," an ALJ is to give the medical opinions of treating physicians substantial or considerable weight. Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. With good cause, an ALJ may disregard a treating physician's opinion, but he must clearly articulate the reasons for doing so.
>
> Moreover, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence. Therefore, when the ALJ fails to state with at least some measure of clarity the grounds for his decision, we will decline to affirm simply because some rationale might have supported the ALJ's conclusion.

(internal quotation marks and citations omitted).

The ALJ is required "to state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error." *Kahle v. Comm'r of Soc. Sec.*, 845 F. Supp. 2d 1362, 1271 (M.D. Fla. 2012) (citing *Sharfarz v. Bowen,* 825 F.2d 278, 279 (11th Cir. 1987)).  Additionally, the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician. *Id.*

### 3.  Dr. Pittack's Opinion

On June 17, 2010, Dr. Pittack, a Board Certified, child and adult psychiatrist, completed a Medical Source Statement (Mental Capacities Evaluation) (the "Evaluation"). (R. 405-411).   In the Evaluation, Dr. Pittack found that the Plaintiff had poor ratings in the following areas[5]:

1.  Ability to understand, carry out, and remember simple insructions

2.  Perform simple tasks

3.  Sustain concentration to task

4.  Sustain attention to task

5.   Use judgment

6.  Ability to make simple work-related decisions

(R. 405-407).

Dr. Pittack found that the Plaintiff had marked ratings in the following areas[6]:

1.  Independently perform routine repetitive tasks

2.  Achieve goals and respond to time limits

3.  Perform work requiring regular contact with others

4.  Relate appropriately to supervisors and co-workers

---

[5] Poor was defined as an impairment which seriously and significantly interferes with the ability to perform basic work activities independently, appropriately, and effectively.  (R. 405).

[6] Marked was defined as extreme impairment of ability to function.  (R. 405).

5. **Relate appropriately to the public**

6. **The ability to maintain socially appropriate behavior and adherence to basic standards of neatness and cleanliness**

7. **Respond appropriately to usual work situations**

8. **Respond appropriately to changes in a routine work setting**

9. **Respond appropriately to the stresses of customary work pressures in work environment**

10. **Maintain production standards**

11. **The ability to perform activities within a schedule**

12. **The ability to maintain regular attendance**

13. **The ability to be punctual within customary tolerances**

**(R. 405-408).**

Dr. Pittack further found that the Plaintiff's functional limitations had been present since the first date of his examination of the Plaintiff. (R. 408). As part of the medical source statement, Dr. Pittack stated that there were medically documented findings of generalized persistent anxiety accompanied by motor tension, autonomic hyperactivity, apprehensive expectation and vigilance and scanning. (R. 409). Dr. Pittack also found that the Plaintiff had recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and impending doom, occurring on average at least once a week, and recurrent obsessions or compulsions which are a source of marked distress. (R. 409). He opined that these symptoms resulted in marked restrictions of daily living, difficulties in maintaining social functioning, difficulties in maintaining concentration, persistence or pace, and four or more repeated episodes of decompensation, each of extended duration. (R. 410). He also found that the Plaintiff had a "complete inability to function independently outside the area of one's home." (R. 410).

13

Dr. Pittack also completed medical interrogatories on the same date.  (R. 437-438). He diagnosed the Plaintiff with major depressive disorder, recurrent with psychotic features. (R. 437).  Further, Dr. Pittack also stated that his prognosis for the patient's condition was "poor prognosis," and that the Plaintiff's impairments had been present since the first day of his examination, and could reasonably be expected to last 12 months or longer.  (R. 438).

### 4.  Dr. David Kirk's Opinion

On June 27, 2007, David Kirk, Ph.D., a State Agency consulting psychologist, completed a Psychiatric Review Technique form and diagnosed the Plaintiff with mild depression and mild anxiety improving with treatment, and passive/dependent/avoidant personality disorder.  (R. 312-324).  Dr. Kirk found that the Plaintiff had mild restrictions of daily living and mild difficulties in social functioning.  (R. 332).  Dr. Kirk further found that the Plaintiff had moderate difficulties in maintaining concentration, persistence or pace. (R. 322).

Dr. Kirk also completed a Mental Residual Functional Capacity Assessment ("RFC").  (R. 308-311).  In the RFC, Dr. Kirk concluded that "the medical evidence of record does not support any significant mental problems or restrictions."  (R. 311).  Dr. Kirk further stated that there is no documented, credible, or reasonable basis for any significant mental restrictions and any allegations of such are not credible and are unreasonable.  (R. 311).  Dr. Kirk also stated that the evidence of the file does not support the allegations of the claimant.  (R. 311).

### 5.  Dr. Sharon Ames-Dennard's Opinion

On August 26, 2008, Sharon Ames-Dennard, Ph.D., a State Agency consulting psychologist, completed a Psychiatric Review Technique form along with a RFC.  (R. 379-395).  In the Psychiatric Review Technique form, Dr. Ames-Dennard diagnosed the Plaintiff with mild depression, improving with treatment, mild anxiety, and

14

passive/dependent/avoidant personality disorder.  (R. 382, 384, 386).  She found that the Plaintiff had a mild degree of limitation in his restrictions of daily living and mild difficulties in maintaining social functioning. (R. 389).  Dr. Ames-Dennard also found that the Plaintiff had moderate difficulties in maintaining concentration, persistence, and pace.  (R. 389).  She found that the Plaintiff did not have any episodes of decompensation.  (R. 389).

In the Mental RFC, Dr. Ames-Dennard found that the Plaintiff was moderately limited in his ability to understand and remember detailed instructions and in his ability to carry out detailed instructions. (R. 393).  She also found that the Plaintiff was moderately limited in his ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (R. 394).  Dr. Ames-Dennard found in her functional capacity assessment that the Plaintiff's activity of daily living as reported by the Plaintiff and his wife were restricted by physical limitations only.  A mental status examination reflected that the Plaintiff had mild anxiety, improving with treatment; there was no evidence of psychosis; his affect was congruent with his mood; he was oriented in three spheres; his memory was intact, and his abstract thinking, insight, and judgment were good.  (R. 395).

Ultimately, Dr. Ames-Dennard concluded that no substantial mental health restrictions were present and found that the Plaintiff could understand simple and complex directions, retain and retrieve mental data as needed, and could attend/concentrate/persist during the completion of simple and complex tasks across sustained intervals.  (R. 395).   Dr. Ames-Dennard further found that the Plaintiff was able to interact appropriately with coworkers, supervisors and laypersons.  (R. 395)

### 6.  The ALJ's Analysis of the Medical Opinion Evidence

The ALJ accorded little weight to the opinion of Dr. Pittack because the ALJ found that Dr. Pittack's opinion was "conclusory, and completely inconsistent with his contemporaneous treatment notes.  Dr. Pittack's bleak assessment of the claimant's functional capacity to perform mental work related activities was not consistent with his treatment notes, which indicated that the claimant was stable on his medication, and reportedly had less depression, less anxiety and decreased panic attacks." (R. 37).  The ALJ accorded considerable weight to the opinion of Dr. Kirk because he found it to be consistent with the treatment records as a whole. (R. 37).  The ALJ also accorded Dr. Ames-Dennard's opinion considerable weight because he found it to be "well supported by the medical signs and findings and is consistent with the medication management treatment records." (R. 37).

The Plaintiff asserts that "although Dr. Pittack's numerous office notes are highly illegible they reflect Mr. Polanco's symptoms of anxiety, depression, insomnia, mood swings, panic attacks, sadness, dysthymia, anhedonia, poor concentration, as well as adverse reactions to various life stressors, that waxed and waned with medication adjustments." ECF No. [16] at 5.

Contrary to the Plaintiff's assertions, the treatment notes are generally legible, and the ALJ's determination that Dr. Pittack's opinions are inconsistent with the treatment records is supported by substantial evidence. The treatment notes do not support the conclusions asserted by Dr. Pittack in his responses to the interrogatories and Medical Source Statement.  A review of the treatment notes reveals that the medical documented findings that Dr. Pittack asserts are part of the record, are in fact absent. For instance, there is nothing in the treatment notes to indicate that motor tension, autonomic hyperactivity, apprehensive expectation or vigilance and scanning were present.  While Dr. Pittack does make notes on the Plaintiff's affect and mental status in

his treatment notes, there is nothing to suggest that the Plaintiff's level of functioning was commensurate with Dr. Pittack's Medical Source Statement.  There were no psychiatric hospitalizations, and there were no episodes of decompensation noted.  As noted above, generally the Plaintiff reported a lessening of symptoms while on medication.  (R. 343, 344, 415, 416, 421, 423, 425, 427).   Dr. Pittack never recommended psychotherapy, although this was recommended at the initial psychiatric evaluation performed by Dr. de la Vega.  (R. 340).  At that time, the Plaintiff declined such treatment stating he wanted to wait until he felt better.  (R. 340).  This suggestion was not revisited, and the treatment notes of Dr. Pittack indicate that the Plaintiff in fact improved on medication and without psychological treatment. Quite simply, Dr. Pittack's treatment notes are not consistent with someone who is as non-functional as Dr. Pittack asserts in his Medical Source Statement and interrogatories.

The Plaintiff asserts in his Reply that a report of fewer panic attacks does not necessarily indicate that the Plaintiff would be able to sustain fulltime employment.  However, the treatment notes themselves do not specify limitations or the particular effects that the Plaintiff's impairments were having on the Plaintiff's functioning.  While an improvement may not necessarily indicate an ability to sustain employment, the absence of any mention of the significant functional limitations contained in Dr. Pittack's Medical Source Statement and interrogatory answers, combined with his repeated references to improvement with treatment, provide substantial evidence to support the ALJ's determination that Dr. Pittack's opinion should be accorded little weight.  Given the fact that the treatment notes are more than cursory, the absence of function limitations is telling.

Additionally, the existence of two early GAF scores in the treatment notes do not form an adequate basis for the conclusion that the Plaintiff is disabled.  In fact, the

Commissioner has declined to endorse the GAF scale for use in Social Security cases.[7]

*Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005).

In sum, the undersigned finds that substantial evidence supports the ALJ's decision to discount the opinion of Dr. Pittack because Dr. Pittack's conclusions were inconsistent with his contemporaneous treatment notes. 20 C.F.R. § 416.927(c)(2); *Philips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004) (finding that inconsistencies between and treating physician's opinion and treatment notes constitutes good cause to discount the opinion of the treating physician).[8]

**B.      The Plaintiff's Residual Functional Capacity Assessment**

The Plaintiff asserts that the ALJ erred in relying on the outdated assessments of the State agency medical consultants in assessing the Plaintiff's RFC, ECF No.[16] at 17. The Defendant counters that the regulations do not impose a limit on how much time may pass between a report and the ALJ's decision to reliance upon it, ECF No. [17] at 15.

---

[7] **The GAF Scale is a numeric scale that mental health physicians and doctors previously used to rate the occupational, psychological, and social functioning of adults. *American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition* ("DSM-IV") Multiaxial Assessment (rev. 2000).  In the Fifth edition of the DSM, published in 2013, the use of the GAF scale was discontinued.  For a discussion of why the GAF was discontinued, including citations to studies regarding its unreliability, see Victoria E. Kress, et al., *The Removal of the Multiaxial System in the DSM-5: Implications and Practice Suggestions for Counselors*, The Professional Counselor, Jul. 2014, *available at* http://tpcjournal.nbcc.org/the-removal-of-the-multiaxial-system-in-the-dsm-5-implications-and-practice-suggestions-for-counselors/.**

[8] **The undersigned does not find it necessary to address the issue raised by the Defendant that the Plaintiff relies on outdated caselaw as related to the opinion of the non-examining physician forming the basis for the rejection of the treating physician's opinion.  As described herein, the undersigned finds that the ALJ did not err by discounting the opinion of the treating physician because Dr. Pittack's opinion was not consistent with his contemporaneous treatment notes, not because the reviewing physicians disagreed with Dr. Pittack's opinion.  After the ALJ determined that little weight was to be accorded to Dr. Pittack's opinion, the ALJ was free to rely on any substantial evidence in the record in making his determination, including the opinions of the consulting physicians.**

1.  <u>**Physical RFC Assessment**</u>

The Plaintiff alleges that the ALJ erred by affording considerable weight to the opinion of Dr. Andriole in finding that the Plaintiff was capable of performing the exertional demands of medium work, ECF No. [16] at 15.  The Plaintiff states that Dr. Andriole misread the record when he stated that the Plaintiff's diabetes and hypertension were stable.  The Plaintiff asserts instead that in fact, according to Dr. Catano, the consultative physician, the Plaintiff's diabetes was unstable.

As outlined above, the undersigned does not find it necessary to discuss this issue at length as the Plaintiff has failed to demonstrate how the Plaintiff's unstable diabetes relates to his functional limitations.  The Defendant is correct in stating that the relevant consideration is not the diagnosis of unstable diabetes, but the effect that such a diagnosis has the Plaintiff's ability to function. The treatment records summarized in chart form in the Plaintiff's motion do not explain what effect the diabetes had on the Plaintiff, nor does the Plaintiff point to evidence in the record that supports the conclusion that the Plaintiff's diabetes impacted the Plaintiff's ability to sustain fulltime employment as set forth in the ALJ's RFC.   As such, the undersigned finds that the ALJ did not commit error as related to the Plaintiff's physical RFC assessment.  *See, e.g., Patterson v. Bowen,* 799 F.2d 1455, 1458 (11th Cir. 1986) ("Patterson's hypertension was mild, and her diabetes, though poorly controlled, had not resulted in any significant complications….Thus Patterson is not entitled to disability benefits").

Although the Plaintiff argued that the ALJ should not have given "considerable probative weight to the opinion of Dr. James Andriole regarding his physical functional capacity assessment" because Dr. Andriole erroneously stated that the Plaintiff's diabetes was under control, the Plaintiff has ignored the remainder of the ALJ's assessment that noted "that no treating physician has offered a contrary opinion or imposed greater limitations."  The ALJ's review of the medical records supports his

decision with respect to the opinion of Dr. Andriole.  Therefore, any error with respect to the degree to which the Plaintiff's diabetes was controlled is not significant. The ALJ's physical RFC determination is supported by substantial evidence.

### 2.   Mental RFC Assessment

The Plaintiff asserts that the ALJ made inconsistent findings regarding the Plaintiff's mental limitations, ECF No. [16] at 16.  The ALJ determined that the Plaintiff had moderate limitations in concentration, persistence or pace.  (R. 31).  The ALJ also determined that the Plaintiff had the ability to perform unskilled work as he "is able to understand, remember and carry out short simple instructions, respond appropriately to supervisors, co-workers and usual work situations, and deal with changes in a routine work setting.  (R. 32).  The Plaintiff asserts that the ALJ's finding that the Plaintiff's sole mental limitation is a limitation to simple tasks is not supported by substantial evidence, ECF No. [16] at 16.

As outlined above, the ALJ's decision to accord little weight to the opinion of Dr. Pittack was without error.  Therefore, the ALJ did not commit error by relying on the opinions of the State Agency psychologists who found that despite the Plaintiff's mental impairments, the Plaintiff would be capable of understanding simple instructions and performing simple, repetitive tasks.  (R. 311, 395). [9]

### C.   The Plaintiff's Credibility

The Plaintiff asserts that the ALJ's credibility finding is not supported by substantial evidence, ECF No.[16] at 17-18.

In considering the Plaintiff's symptoms, the ALJ must follow a two-step process where it first must be determined whether there is an underlying medically determinable

---

[9] With respect to the claim that the ALJ erred in relying on outdated consultative reports, the undersigned notes that the medical evidence in the record after the preparation of these reports reflects improvement; therefore there is no indication of worsening symptoms and therefore it was not necessary to obtain updated reports.

physical or mental impairment(s)—i.e., an impairment(s) that could be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.  SSR 16-3p.  Once this is shown, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent that these limit Plaintiff's functioning.  *Id*.  If statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire case record.  *Id.*

The responsibility of the fact-finder, the ALJ, is to weigh the Plaintiff's complaints about his symptoms against the record as a whole; this falls to the ALJ alone to make this determination.  20 C.F.R. §§ 404.1529(a), 416.929(a).  A clearly articulated credibility finding supported by substantial evidence in the record will not be disturbed by a reviewing court.  *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). "[T]he ALJ's discretionary power to determine the credibility of testimony is limited by his obligation to place on the record explicit and adequate reasons for rejecting that testimony." *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).  If the ALJ decides not to credit such testimony, she must articulate explicit and adequate reasons for doing so.  *Hale v. Bowen*, 831 F. 2d 1007, 1011 (11th Cir. 1987).  A lack of an explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  *Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir.1982).

In the case at bar, the ALJ found that:

> Although he is generally credible, he is overstating his limitations.  The evidence of record indicates that his medications control his symptoms.  The claimant's depression and anxiety have improved with treatment.  The claimant's hypertension and diabetes are controlled with medication.  Finally I noted that his treatment for diabetes and depression have been conservative and non-aggressive.

> **The claimant has no history of hospitalizations for his depression, and his condition was treated effectively with only monthly or bi-monthly medication management sessions.**

(R. 37).

As outlined above, the treatment notes of the Plaintiff's treating physician do not support the allegations of the Plaintiff, and the findings of the State Agency Psychologists instead support the position of the ALJ that the Plaintiff's allegations are not credible.  As such, the undersigned finds that the ALJ articulated explicit and adequate reasons for rejecting the Plaintiff's allegations.

### D.   Hypothetical Question Posed to the VE

The Plaintiff asserts that the hypothetical question upon which the ALJ relied in finding that there is other work in the national economy failed to include all of the limitations supported by the record, ECF No. [16] at 19.   Specifically, the Plaintiff asserts that the hypothetical presented to the VE was insufficient because it failed to include the Plaintiff's moderate limitations in concentration, persistence or pace, ECF No. [16] at 19. The Defendant counters that substantial evidence supports a finding that the Plaintiff would be capable of performing a significant number of jobs in the national economy.

The ALJ presented the following hypothetical to the VE at the hearing:

> **[A]ssume a hypothetical claimant of the same age, education, and work experience as Mr. Polanco and we assume that I find such a hypothetical claimant can occasionally lift, carry, push and pull 50 pounds, frequently 25 pounds.  Sit stand and walk six hours each in an eight hour work day and can occasionally climb ramps, stairs, ladders, ropes, scaffold, balance, stoop, kneel, crouch and crawl… And we also assume that such a hypothetical claimant is only capable of understanding, remembering and carrying out short simple instructions, responding appropriately to supervisor, co-workers, usual work situations and changes but in a routine work setting.**

(R. 71-2).

The VE responded that such a hypothetical claimant would be able to perform work as a dining room attendant or cook helper. (R.72-73).

While it is true that the ALJ did not specifically state in his hypothetical that the hypothetical claimant had moderate limitations in concentration, persistence, and pace, the fact that he did include the limitation that the hypothetical claimant is only capable of understanding, remembering and carrying out short simple instructions is enough.  "[A]n ALJ's hypothetical restricting the claimant to simple and routine tasks adequately accounts for restrictions related to concentration, persistence and pace where the medical evidence demonstrates that the claimant retains the ability to perform the tasks despite concentration deficiencies." *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x. 869, 872 (11th Cir. 2011).  Here, as discussed previously, the reviewing psychologists both stated that the medical evidence of record did not support any significant mental problems or restrictions and that the Plaintiff was able to attend, concentrate and persist during the completion of simple and complex tasks. (R. 311, 395).

Finally, the Plaintiff asserts that the ALJ failed by not including Dr. Pittack's marked limitation in social functioning in his hypothetical, ECF No. [16] at 20.  However, because the ALJ discounted the opinion of Dr. Pittack, and did not ultimately find that the Plaintiff had marked limitations in social functioning, there was no error in excluding this limitation in the hypothetical. In addition, Dr. Ames-Dennard stated that, despite his mental limitations, the Plaintiff would be able to interact appropriately with coworkers, supervisors, and laypersons.  (R. 395).

## VI.    CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court finds that substantial evidence supports the conclusion of the ALJ that the Plaintiff has not been under a disability as defined in the Social Security Act from June 6, 2007, through August 13, 2010.

Therefore, it is

ORDERED AND ADJUDGED that the Plaintiff's Motion for Summary Judgment, ECF No. [16], is **DENIED**, that the Defendant's Motion for Summary Judgment, ECF No. [17], is **GRANTED**.

DONE AND SUBMITTED in chambers in Miami, Florida on September 29, 2016

_Andrea M. Simonton_
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies furnished via CM/ECF to:
All counsel of record